```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
                                   )
K.S. and K.L., through her parent  )
L.L., on behalf of a class of      )
those similarly situated,          )
                                   )
         Plaintiffs,               )
                                   )
    v.                             )    C.A. No. 14-077 S
                                   )
R.I. BOARD OF EDUCATION, by and    )
through its chair, Barbara S.      )
Cottam, in her official capacity,  )
                                   )
         Defendant.                )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, Chief Judge.

In this case the Court must decide whether the Rhode Island Board of Education's practice permitting local education agencies to terminate special-education services to disabled children at age 21 violates the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Before the Court are Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. For the reasons set forth below, I find that the Rhode Island statutory and regulatory scheme does not violate the IDEA. Therefore, Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED.

I.  Background

Plaintiffs are a certified statewide class of disabled individuals who, "but for turning 21, would otherwise qualify or would have qualified for a [free appropriate public education] until age 22 because they have not or had not yet earned a regular high school diploma."[1] Plaintiffs claim that § 300.101 of Rhode Island's Regulations Governing the Education of Children with Disabilities, permitting local education agencies ("LEAs")[2] to terminate disabled students' special-education services at age 21, violates their IDEA right to a free appropriate public education ("FAPE") between the ages of 21 and 22.

---

[1] The full definition of the statewide class is as follows:

> All individuals who were over 21 and under 22 within two years before the filing of this action or will turn 21 during the pendency of this action who are provided or were provided a FAPE under the IDEA by any [Local Education Agency] in the State of Rhode Island and who, but for turning 21, would otherwise qualify or would have qualified for a [free appropriate public education] until age 22 because they have not or had not yet earned a regular high school diploma ("the Class").

(3/17/16 Order 2, ECF No. 50.)

[2] Rhode Island education regulations define a local education agency as a "public board of education/school committee or other public authority legally constituted within the State for either administrative control or direction of one or more Rhode Island public elementary schools or secondary schools." R.I. Admin. Code 21-2-46:L-6-1.0.

Defendant Rhode Island Board of Education ("Board") oversees the state's elementary, secondary, and higher education systems, including special education.[3] The Board argues that § 300.101 is consistent with the IDEA because the LEAs' obligation to provide a FAPE to disabled children ages 18 through 21 applies only if it does not conflict with state law or practice concerning the provision of public education to non-disabled children.[4]

A. Statutory and Regulatory Framework

The IDEA and accompanying regulations require states that receive federal funding for education to provide a FAPE to all children with disabilities "between the ages of 3 and 21, inclusive."[5] A plain reading of this requirement suggests that children with disabilities are entitled to receive FAPE services up to the day they turn 22.[6] However, the obligation to provide a FAPE to children with disabilities ages 18 through 21 applies only if it does not conflict with state law or practice.[7]

---

[3] R.I. Gen. Laws §§ 16-24-1, 16-97-1, 16-97-4.

[4] See 20 U.S.C. § 1412(a)(1)(B)(i).

[5] 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.102(a).

[6] St. Johnsbury Academy v. D.H., 240 F.3d 163, 168-69 (2d Cir. 2001); but see Monahan v. School Dist. No. 1, 229 Neb. 139, 143 (1988) and Natrona Cty. Sch. Dist. No. 1 v. Ryan, 764 P.2d 1019, 1033-34 (Wyo. 1988) (interpreting the IDEA's FAPE requirement to end upon a student's 21st birthday).

Rhode Island law mandates that all eligible children with disabilities receive a FAPE.[8] However, pursuant to R.I. Gen. Laws § 16-24-1(f), the LEAs' obligation to make a FAPE available to all children with disabilities ends upon a student's 21st birthday.[9]

---

[7] Section 1412 of the IDEA provides, in pertinent part, that:

> The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children . . . (i) aged . . . 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in [that age group].

20 U.S.C. § 1412(a)(1)(B).

[8] R.I. Gen. Laws § 16-24-1(a) provides, in relevant part, that:

> In any city or town where there is a child with a disability within the age range as designated by the regulations of the [Board], . . . the school committee of the city or town where the child resides shall provide the type of special education that will best satisfy the needs of the child with a disability . . . .

See also R.I. Admin. Code 21-2-54:B § 300.101.

[9] The General Assembly added paragraph (f), effective June 28, 2016, providing that:

> A child with a disability as referenced in subsection (a) of this section shall have available to them any benefits provided by this section up their twenty-first birthday. Provided, in the event such a child with a disability is enrolled in a post-secondary or transitional educational program as part of the services provided to the child by the school committee or local education agency (LEA), and such child reaches twenty-one (21) years of age during a school or program year, then the school committee's or LEA's obligation to pay

4

Section 300.101 of Rhode Island's Regulations Governing the Education of Children with Disabilities provides, in relevant part, that "[a] [FAPE] must be available to all eligible children residing in the LEA, between the ages of 3 and 21, inclusive (until the child's twenty first birthday or until the child receives a regular high school diploma)."[10]

Rhode Island does not impose a similar age cap on the provision of public education to non-disabled, general education students. While R.I. Gen. Laws § 16-19-1(a), the state's compulsory education statute, generally requires school attendance up to age eighteen, LEAs have discretion to place "reasonable upper age limitations [on] student admissions."[11]

---

for the post-secondary or transitional program shall continue through to the conclusion of the school or program's academic year. Students who require more extensive care will remain under the direction of the department of rehabilitative services and will be transitioned through the individual education plan prior to reaching age twenty-one (21).

P.L. 2016, ch. 185, § 1; P.L. 2016, ch. 173, § 1.

[10] R.I. Admin. Code 21-2-54:B § 300.101.

[11] See e.g., John C.Q. Doe v. Middletown Sch. Comm., decision of the Commissioner of Education 7 n.5, Jan. 7, 1998 (citing Concerned Parents and Teachers v. Exeter-West Greenwich Reg'l Sch. Dist., decision of the Commissioner of Education, Aug. 24, 1989).

5

In addition, Rhode Island's Adult Education Act, R.I. Gen. Laws § 16-63-1 et seq., provides that "all citizens, regardless of age, have the right to education."[12] Rhode Island's state-wide system of adult education is primarily delivered to adult students through an informal network of community-based organizations.[13] Rhode Island's adult education programs include basic education, vocational training, higher education, continuing education in professional and technological occupations, general personal development, public service education, and supportive services.[14] This law makes no distinction between disabled and non-disabled citizens.

II. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are

---

[12] R.I. Gen. Laws § 16-63-2.

[13] Dep. of David V. Abbot 36:9-15, ECF No. 55-5.

[14] R.I. Gen. Laws § 16-63-5(1)-(7).

not disputed."[15]  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."[16]  "A fact is material if it has the potential of determining the outcome of the litigation."[17]

III. Discussion

    A. Summary Judgment

The only significant factual dispute between the parties is the degree of public supervision the Rhode Island Department of Education ("RIDE") exercises over the state's adult education programs.  Plaintiffs contend that RIDE imposes performance "standards" on adult education providers and monitors compliance with those standards; the Board contends that RIDE merely monitors adult education providers' performance against "targets" to determine the community-based organizations' eligibility for funding.  The question before the Court, however, does not turn on the degree of public supervision that RIDE has over the state's

---

[15] Adria Int'l Grp., Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001) (citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

[16] Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (quoting Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

[17] Id. (quoting Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

adult education programs. Therefore, this factual dispute is not material to the resolution of the issue of statutory interpretation that is before the Court and this case is appropriate for summary judgment.

B. Statutory Interpretation Arguments

At the core of the parties' dispute is how the IDEA's state-law based limitation to the FAPE requirement (20 U.S.C. § 1412(a)(1)(B)(i)) should be interpreted. Plaintiffs argue that, because § 300.101 allows the LEAs to terminate disabled students' FAPE services at 21 but state law does not impose a similar age cap on the provision of public education to non-disabled general education students, § 300.101 is more generous to the state's non-disabled students and, accordingly, violates the IDEA. Moreover, Plaintiffs further contend that Rhode Island also provides "public education" to non-disabled, general education students between ages 21 and 22 through its adult education programs and, therefore, must also provide FAPE services to disabled special-education students up to 22.

The Board proposes a fundamentally different interpretation of the statutory and regulatory scheme. It contends that, although Rhode Island has no age cap on the provision of public education to non-disabled, general education students, school attendance is mandatory only until age 18; therefore, in practice, "public

8

education for non-disabled students ends prior to age 21." Additionally, the Board argues that the only reasonable interpretation of "public education" under § 1412(a)(1)(B)(i) of the IDEA is "an education provided by the LEAs, subject to and meeting state standards, at a public school, at public expense."[18] Adult education, the Board argues, is not synonymous with "public education" under federal or state law, and thus the state does not actually provide "public education" to students over age 21 because adult education is not included within the definition of public education. The Board contends that terminating FAPE services to disabled, special education students at age 21 is therefore not inconsistent with state law or practice regarding the provision of public education to non-disabled, general education students.

C. Statutory Interpretation Framework

"[A] statute ordinarily will be construed according to its plain meaning."[19] Courts "examin[e] the plain meaning of the statutory language and consider[ ] the language in the context of the whole statutory scheme."[20] Accordingly, in discerning the

---

[18] Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. 17, ECF No. 55-1.

[19] In re Thinking Mach. Corp., 67 F.3d 1021, 1024–25 (1st Cir. 1995).

[20] Gen. Motors Corp. v. Darling's, 444 F.3d 98, 108 (1st Cir. 2006) (citations omitted).

meaning of the IDEA's exception to the FAPE requirement (§ 1412(a)(1)(B)(i)), this Court first examines the "plain meaning" of the statute's text within the context of the IDEA statutory scheme.

The clear and unambiguous language of the IDEA makes clear that a state's obligation to make a FAPE available to all children with disabilities ages 18 through 21 does not apply if it conflicts with the state's provision of public education to non-disabled, general education students of the same age.[21] The first question then is what "public education" is provided to non-disabled, general education students in the State of Rhode Island.

In Rhode Island, public education for non-disabled general education students in a public school over the age of 18 is not a legal right.[22] While there is no state law prohibiting adult attendance in a regular public high school, the LEAs have discretion to impose "reasonable upper age limitations" on attendance and have withheld permission for a non-disabled adult student to attend.[23] For example, in an administrative decision RIDE upheld a LEA's decision to deny a 19-year-old admission to a

---

[21] 20 U.S.C. § 1412(a)(1)(B)(i).

[22] See R.I. Gen. Laws § 16-19-1(a) (providing that compulsory school attendance ends at age 18); John C.Q. Doe at 7 n.5.

[23] See John C.Q. Doe at 5, 7 n.5.

public high school because, among other reasons, he required a "substantial number of credits" before he could receive a high school diploma and he was older than all of the students in his class.[24] In contrast to their non-disabled peers, disabled students are entitled to receive a FAPE up to age 21 under both state and federal law.[25]

The discretionary admission policies for non-disabled students over the age of 18 and the administrative decisions issued by RIDE permit the reasonable inference that the LEAs do not in fact admit students over the age of 21 to public schools, and no evidence provided by the Plaintiffs is to the contrary. Accordingly, the Court concludes that Rhode Island does not guarantee that it will provide public education for non-disabled students in public schools between the ages of 21 and 22. Furthermore, § 300.101 imposes only a minimum obligation on LEAs. It may also be inferred, therefore, that the LEAs have discretion to continue FAPE services for disabled, special education students

---

[24] Id. at 7-8.

[25] Rhode Island's requirement to provide a FAPE does not apply to all disabled children up to age 21, for example those who have graduated with a regular high school diploma. R.I. Admin. Code 21-2-54:B § 300.102(1)(i). Similarly, if a non-disabled, general education student graduates with a regular high school diploma before age 18, the state's obligation to provide a free public education would end.

over age 21 just as they have discretion to admit non-disabled, general education students over 21.

Plaintiffs argue in the alternative that Rhode Island provides "public education" to non-disabled, general education students between ages 21 and 22 through its adult education programs and, therefore, must also provide FAPE services to disabled, special education students up to age 22. Plaintiffs rely on an opinion from the Ninth Circuit interpreting public education in Hawaii to include adult education.[26]

At issue in E.R.K. was a Hawaiian statute that established an upper age limit of 20 on the provision of public education to both general and special education students.[27] Hawaii, though, continued to provide adult education to "any student 18 or older who lack[ed] a high school diploma" in Community Schools for Adults, a "network of adult-education schools" operated by the Hawaii Department of Education.[28] These adult education programs, however, "d[id] not offer IDEA services to disabled students" who, as a result, were not able to "pursue diplomas in the Community Schools for Adults after aging out of [the] public education

---

[26] See E.R.K. v. State of Hawaii Dep't of Educ., 728 F.3d 982 (9th Cir. 2013).

[27] Id. at 984-85.

[28] Id. at 985.

[system]."[29] The plaintiffs filed a class-action suit against the Hawaii Department of Education alleging, in part, that the statute violated their federal right to a FAPE.[30]

The Ninth Circuit held that the Hawaiian statute violated the IDEA because it created a "two-track system" where "nondisabled students between the ages of 20 and 22 c[ould] pursue the diplomas that eluded them in high school, but students with special needs [were] simply out of luck."[31] The court concluded that "[a] state's duty to educate disabled children until they turn 22 is only excused if free public education is foreclosed to disabled and nondisabled students alike."[32] The court determined that the IDEA's exception to the FAPE requirement was ambiguous and subsequently underwent an extensive analysis of the relevant legislative history to discern Congress's intent.[33] It examined the Senate Report that "accompan[ied] the 1975 statute that created the [IDEA's] exception [to the FAPE requirement]," which explained that the exception did not apply "where a state does now in fact

---

[29] Id.

[30] Id.

[31] Id. at 992.

[32] Id. at 991.

[33] Id. at 987-88.

13

provide or assure the provision of free public education to non-handicapped children in [the same] age groups."[34]

The court ultimately defined "free public education" as education that "is provided at the public expense, under public supervision and direction, and without charge; and . . . involves preschool, elementary or secondary education."[35] The court then concluded that the high school equivalency diploma programs offered by Hawaii's Community Schools for Adults qualified as "free public education" because the programs were a form of "secondary education[36]" provided in "nonprofit day schools" at "public expense."[37]

While E.R.K. is instructive, I respectfully disagree with the Ninth Circuit's interpretation of the IDEA's exception to the FAPE requirement. The wording of § 1412(a)(1)(B)(i), in the context of the statute as a whole, leads me to conclude that, for purposes of the IDEA, Congress did not intend the term "public education" to

---

[34] Id. at 987.

[35] Id. at 988.

[36] The IDEA defines "secondary school" as a "nonprofit institutional day or residential school, including a public secondary charter school, that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12." 20 U.S.C. § 1401(27).

[37] Id. at 988-89.

14

include all adult education programming, regardless of its form and delivery. For example, in § 1401 of the IDEA, Congress uses the specific term "adult education" in its definition of transition services to disabled children.[38] Congress's use of the term "adult education" there demonstrates its intent to distinguish adult education from public education.[39] Plaintiffs' interpretation of the statute assigns a meaning to public education that is unsupported by the text of the IDEA itself.

In addition, throughout the U.S. Code, "adult education" is distinguished from other types of education. For example, the statutes regulating the provision of adult education are located in subchapter two of the Workforce Innovation and Opportunity Act, 29 U.S.C. § 3111, and not in title 20 of the U.S. Code, which governs elementary, secondary, and special education. Pursuant to § 3272 of the Workforce Innovation and Opportunity Act, "adult education" means:

> [A]cademic instruction and education services below the postsecondary level that increase an individual's ability to (A) read, write, and speak in English and perform mathematics or other activities necessary for

---

[38] 20 U.S.C. § 1401(34)(A).

[39] See United States v. Roberson, 459 F.3d 39, 54 (1st Cir. 2006) (quoting Citizens Awareness Network, Inc. v. United States, 391 F.3d 338, 348 (1st Cir. 2004) ("The principle is clear that Congress's use of differential language in various sections of the same statute is presumed to be intentional and deserves interpretative weight.")).

15

the attainment of a secondary school diploma or its recognized equivalent; (B) transition to postsecondary education and training; and (C) obtain employment.[40]

The Ninth Circuit concluded that Hawaii's adult education programs were "quintessentially secondary education" because their purpose was to help students earn a high school diploma.[41] The Workforce Innovation and Opportunity Act's definition of adult education, though, acknowledges that adult education includes education below the postsecondary level, specifically stating that it includes instruction "necessary for the attainment of a secondary school diploma." While these two statutes may not be considered in pari materia, Congress's definition of "adult education" in the Workforce Innovation and Opportunity Act is further evidence that adult education is a term that connotes a specific meaning and not one that is generally associated with public education.[42]

Furthermore, the IDEA provides that state law determines what constitutes elementary or secondary education. See e.g., 20 U.S.C.

---

[40] 29 U.S.C. § 3272.

[41] E.R.K., 728 F.3d at 988.

[42] See 2B Sutherland Statutory Construction § 51:3 (7th ed. 2016) ("Statutes are in pari materia—pertain to the same subject matter—when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object.").

§ 1401(6)[43], (27)[44]. Although Rhode Island law does not expressly define "elementary" or "secondary" public education, its regulations pertaining to adult education are found in a separate chapter than the elementary and secondary public education statutes.[45] In construing statutes, there is a presumption that "[w]here . . . one term [is used] in one place, and a materially different term in another, . . . the different term denotes a different idea."[46] It is clear that the Rhode Island legislature did not intend adult education to be coterminous with elementary or secondary public education. I agree with Plaintiffs that there is a right to adult education under R.I. Gen. Laws § 16-63-2 and that this right must be made available to disabled and non-disabled students alike; but, this right is distinct from the public education referred to in the IDEA's exception to the FAPE requirement.

---

[43] The IDEA defines "elementary school" as a nonprofit institutional day or residential school, including a public elementary charter school, that provides elementary education, as determined under State law." 20 U.S.C. § 1401(6).

[44] See n.36, supra.

[45] Compare R.I. Gen. Laws § 16-63-5 (describing the programs and services constituting adult education) with R.I. Gen. Laws § 16-1-5 (providing that it is the duty of the commissioner of elementary and secondary education to develop instructional standards for elementary and secondary schools).

[46] Antonin Scalia & Bryan A. Garner, Reading Law 170 (2012).

Moreover, if the plain meaning of the statute's language were not enough, E.R.K. is factually distinguishable as well. The Hawaii Department of Education operated a network of non-profit Community Day Schools for Adults that excluded disabled students who had aged out of the public school system because they did not provide IDEA services.[47] Adult education in Rhode Island, in contrast, is primarily provided by thirty-four community-based organizations that are typically not directly affiliated "with the state or a local school district" and include "stand-alone adult education providers," "homeless shelters," and "community offshoots that are run by municipalities [and] school libraries."[48] In addition, there is no evidence that disabled individuals are excluded from these programs—rather, the claim is that because they do not offer special education services such as Individualized Education Plans (IEPs) and the like, that LEAs must step up and provide a FAPE through age 22. This argument simply stretches the Rhode Island adult education scheme beyond recognition and must be rejected.

The long and short of it is that Rhode Island's public education scheme requires only that public education is mandatory

---

[47] E.R.K., 728 F.3d at 985.

[48] Dep. of David V. Abbot 36:9-23, ECF No. 55-5.

until age 18 for non-disabled students and thereafter is wholly discretionary with the LEAs. And while adult education is provided by community-based organizations, it is not public education as that term is used in Rhode Island statutes. Therefore, Rhode Island's practice of providing a FAPE only through the 21st birthday is not inconsistent with Rhode Island law or practice concerning public education of non-disabled students; conversely, requiring it to do so would be.

IV. Conclusion

For these reasons alone, I find that § 300.101 does not violate the IDEA and that Defendant is entitled to judgment as a matter of law. Plaintiffs' Motion for Summary Judgment is DENIED (ECF No. 52) and Defendant's Cross-Motion for Summary Judgment is GRANTED (ECF No. 55). Judgment shall enter in favor of Defendant.

IT IS SO ORDERED.

/s/ WESmith
_____
William E. Smith
Chief Judge
Date: May 9, 2017